UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

)
)
LOUAY AWADH,                              )
                                          )
                    Plaintiff,            )
                                          )
        v.                                )
                                          )    Civil Action No.: 15-cv-13993
                                          )
TOURNEAU, INC.,                           )
                                          )
                    Defendant.            )
                                          )
                                          )
                                          )

# MEMORANDUM AND ORDER

CASPER, J.                                                              March 14, 2018

## I.    Introduction

Plaintiff Louay M. Awadh ("Awadh") has filed this lawsuit *pro se* against Defendant Tourneau, Inc. ("Tourneau") alleging violations under 42 U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA"), the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("FMLA"), Mass. Gen. L. c. 151B ("Chapter 151B") and Mass. Gen. L. c. 149, § 100 ("Chapter 149").[1]  D. 1 ¶¶ 3, 6; D. 1 at 14.  Tourneau has filed a partial motion to dismiss under

---

[1] Awadh does not explicitly reference Chapter 151B or Chapter 149 within his complaint, but he asserts that Tourneau's conduct "violate[d] the laws of . . . the State of Massachusetts." D. 1 at 14.  Tourneau interprets the complaint as asserting such specific claims, D. 43 at 4 n.4, 10 n.5, and Awadh adopts this position in his opposition papers, arguing that Tourneau's conduct violated several subsections of chapter 151B.  D. 50 at 24 n.18, 41-42.

1

Fed. R. Civ. P. 12(b)(6) seeking dismissal of Awadh's Section 1981, FMLA, Chapter 151B and Chapter 149 claims. D. 42. For the reasons stated below, the Court ALLOWS Tourneau's motion, id., and dismisses these claims.

## II. Standard of Review

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (internal citation omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court "distinguish[es] the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Saldivar v. Racine, 818 F.3d 14, 18 (1st Cir. 2016) (quoting Cardigan Mt. Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015)). Second, taking the well-pled facts as true and "drawing all reasonable inferences in the pleader's favor," the Court determines if the facts "plausibly narrate a claim for relief." Id. In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103.

"[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted). Nevertheless, a *pro se* complaint survives the motion to dismiss stage only if it "set[s] forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988).

## III. Factual Allegations

The following allegations, unless otherwise noted, are from Awadh's complaint and are accepted as true for the purposes of considering the motion to dismiss. Awadh identifies himself

as a "52-year-old Middleastern Muslim immigrant."  D. 1 ¶ 17.  In January 2009, Awadh applied for a job at Tourneau.  D. 1 ¶ 21.  Awadh was informed that there was no sales associate position vacant at the time, but that the "Vintage Manager" and "Cash Office Associate" positions were available.  Id.  The general manager at Tourneau's Boston location, Vineet Tiwary, interviewed Awadh.  D. 1 ¶ 23.  Awadh and Tiwary had previously worked together at Alpha Omega, another watch retailer where Awadh had worked for eight years.  D. 1 ¶ 19.  Awadh was hired as a cash office associate on February 1, 2009.  D. 1 ¶ 25.

While employed at Tourneau, Awadh alleges that he faced a series of issues regarding his religious beliefs and practices.  Awadh was scheduled to work Fridays on "more than six occasions" between February and September 2009.  D. 1 ¶¶ 26-38, 55.  At Awadh's pre-employment interview, Awadh had informed Tiwary that he would need Fridays off for his religious practices, and "Tiwary agreed to accommodate the Plaintiff's religious practice by giving him Fridays off."  D. 1 ¶ 23.  Instead, however, he alleges he was "forced to violate his own religious practices for fear of termination or negative consequences from his employer."  D. 1 ¶ 26.  In October 2009, Tiwary continued to schedule him for work on Friday and made "disrespectful" and "derogatory" statements about Awadh's Muslim beliefs and practices.  D. 1 ¶¶ 54, 56-57.

Awadh also alleges that he suffered discrimination and harassment at Tourneau that extended beyond his religious beliefs.  First, Awadh's immediate supervisor occasionally made comments that Awadh "was too old when she explained something about the cash office and he would not understand her."  D. 1 ¶ 40.  Second, coworkers also "made discriminatory remarks" about Awadh's "Middle Eastern origin" and culture in March and September 2009.  D. 1 ¶¶ 85-89.  Third, Awadh repeatedly inquired about vacant sales associate positions between February

3

and September 2009 but was "not promoted." D. 1 ¶¶ 47-53. He alleges that in September 2009, Tiwary "started to interview young Caucasian female applicants" for the position. D. 1 ¶ 50. Fourth, Tourneau hired one of Awadh's former Alpha Omega coworkers in June 2009, despite Awadh reminding Tiwary that the coworker had previously engaged in "unwelcomed [sic], explicitly verbal and physical conducts of [a] sexual [] nature." D. 1 ¶¶ 77-80. Later that month, the new hire "made a sexual comment" towards Awadh, and in September 2009, he "attempted to kiss" Awadh. D. 1 ¶¶ 81-82. Awadh informed Tiwary of the incident, but Tiwary "ignored the Plaintiff's concerns." D. 1 ¶¶ 83-84.

Awadh also alleges that on three occasions between March and May 2009, Awadh worked double shifts and did not take a meal break, but that Tourneau nevertheless deducted one hour from his pay for each day. D. 1 ¶¶ 74-76.

On October 4, 2009, Awadh was involved in a car accident that caused "severe pain in his neck, shoulder, back, lower back, left arm and left foot." D. 1 ¶ 59. The following morning, Awadh called Tiwary from the hospital, informed Tiwary he could not work until October 7 and provided him with "the hospital's out of work letter." D. 1 ¶ 60. But the next day, Awadh met with his doctor, who informed him that he would be unable to work until October 28. D. 1 ¶ 61. Awadh's doctor called Tiwary to inform him. D. 1 ¶ 62. Awadh's return date was then delayed several more times "because he was still suffering from pain." D. 1 ¶¶ 63-65. On December 16, 2009, Awadh told Tiwary he would return on January 17, 2010 and provided Tiwary with a letter from his doctor. D. 1 ¶ 65. On December 18, 2009, Awadh received a letter form Tourneau "stating that they had previously advised him that they could not hold his position open for him" and that "he could apply for a position" when he was medically able. D. 1 ¶ 66. Awadh contacted Tourneau about the letter, and on January 8, 2010, he received a letter from Tourneau stating that

4

they had "informed him that they could not keep his position open for him on October 7, 2009." D. 1 ¶¶ 67-68. On January 16, 2010, Awadh alleges that he submitted documents demonstrating his ability to work as of the next day, January 17, 2010, but "was not re-hired." D. 1 ¶ 69.

On January 7, 2011, Awadh requested his personnel records from Tourneau, which they declined. D. 1 ¶ 103. After Awadh reported this response to the Attorney General's office, Tourneau twice "submitted incomplete personnel records" in February and March 2011. D. 1 ¶¶ 104-07. Awadh alleges that the records inaccurately state that Awadh was a part-time employee. D. 1 ¶¶ 109-12.

## IV. Procedural History

Awadh instituted this action on December 1, 2015. D. 1. Tourneau moved to dismiss, D. 17, and Awadh moved for default judgment. D. 20. On February 17, 2017, the Court denied Awadh's motion for a default judgment, D. 20, and denied without prejudice Tourneau's motion to dismiss, D. 17. D. 35. Tourneau has now filed a second motion to dismiss. D. 42.[2]

## V. Discussion

### A. Awadh's Section 1981, FMLA and Chapter 151B Claims Are Time-Barred

Tourneau seeks dismissal of Awadh's Section 1981, FMLA and Chapter 151B claims on the basis that they are time-barred. The Court will only grant Rule 12(b)(6) motions to dismiss that depend upon affirmative defenses such as statute of limitations if "the facts establishing the

---

[2] In response to the present motion, Awadh filed a document that both opposes the motion and asserts a second motion for default judgment. D. 50. This Court denied the portion of this filing that constituted Awadh's motion for default motion, D. 66, but has considered Awadh's filing, D. 50, as his opposition to the motion to dismiss, D. 42. The Court notes that Awadh's filing is 132 pages, violating the local rules of this Court, LR 7.1. Any future filings by Awadh that exceed the 20-page limits under the Local Rules will be struck, but the Court does not do so as to his current filing, D. 50, and the Court has nevertheless considered the arguments therein to the extent possible.

defense [are] clear 'on the face of the plaintiff's pleadings.'" Blackstone Realty LLC v. FDIC, 244 F.3d 193, 197 (1st Cir. 2001) (quoting Aldahonda-Rivera v. Parke Davis & Co., 882 F.2d 590, 591 (1st Cir. 1989)); see LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir. 1998) (explaining that a motion to dismiss on statute of limitations grounds should only be granted where "the pleader's allegations leave no doubt that an asserted claim is time-barred"). Here, it is plain on the face of Awadh's complaint that these claims are time-barred.

1. *Section 1981*

Awadh alleges that Tourneau violated 42 U.S.C. § 1981 through "unlawful discrimination, harassment and retaliation." D. 1 ¶ 3. Claims of Section 1981 violations that arise out of "termination of contracts and the enjoyment of all benefits, privileges, terms, and conditions of the contractual [employment] relationship," 42 U.S.C. § 1981(b), are governed by the four-year statute of limitations established by 28 U.S.C. § 1658. Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382-83 (2004); see Garmon v. AMTRAK, 844 F.3d 307, 318 n.8 (1st Cir. 2016). "[C]laims for discrimination and retaliation accrue when the alleged unlawful act 'has a crystallized and tangible effect on the employee and the employee has notice of both the act and its invidious etiology.'" Buntin v. City of Bos., 813 F.3d 401, 405 (1st Cir. 2015) (quoting Shervin v. Partners Healthcare Sys., Inc., 804 F.3d 23, 33 (1st Cir. 2015)).

Awadh filed suit on December 1, 2015, D. 1, meaning the conduct underlying his Section 1981 claims must have taken place on or after December 1, 2011, to be viable. Even accepting all of the allegations in the complaint as true, all of Tourneau's allegedly unlawful acts occurred before 2011. A liberal construction of the complaint suggests that the latest allegedly unlawful activity occurred in January 2010, when Tourneau refused to rehire him, assuming *arguendo* that their reason for doing so was retaliatory or discriminatory. See D. 1 ¶ 69. Even if incomplete or

inaccurate records could serve as a basis for such claim, even that conduct only occurred as late as March 2011. See D. 1 ¶ 107.

Awadh argues that the statute of limitations did not begin running until February 19, 2015, which is when he obtained a "discharge document" from Tourneau as part of the Massachusetts Commission Against Discrimination ("MCAD") investigation. D. 50 at 34; D. 50-1 at 170. This document (even assuming that it is proper for the Court even to consider it as to the motion to dismiss where such document was not referenced or otherwise incorporated into Awadh's complaint), submitted to the Department of Unemployment Assistance, states that Awadh quit his job. D. 50-1 at 170. Awadh argues that this document "revealed" evidence of discrimination because it is inconsistent with an internal Tourneau document that states the reason for Awadh's change in employment as "discharge," and illustrates misleading and fraudulent activity on Tourneau's part during the MCAD proceedings. D. 50 at 34-35; D. 50-1 at 168; D. 59 at 7-13. Awadh argues that he "did not know—nor could he have known—that he had been discriminated against" until viewing that document. D. 50 at 34. Awadh concludes that he is entitled to equitable tolling of the statute of limitations until that time. D. 50 at 34-35; see Svensson v. Putnam Invs. LLC, 558 F. Supp. 2d 136, 141 (D. Mass. 2008) (explaining that "[e]quitable tolling is available in circumstances in which the plaintiff is excusably ignorant . . . or where the defendant or the MCAD has affirmatively misled the plaintiff" (quoting Andrews v. Arkwright Mut. Ins. Co., 423 Mass. 1021, 1022 (1996)).

Equitable tolling is not justified here. In an employment discrimination case, the limitations period begins to run when the plaintiff learns of the adverse employment action or discriminatory act. See Morris v. Gov't Dev. Bank, 27 F.3d 746, 749-50 (1st Cir. 1994) (explaining that "when an employee knows that he has been hurt and also knows that his employer

has inflicted the injury, it is fair to begin the countdown toward repose"); Poirier v. Mass. Dep't of Corr., 186 F. Supp. 3d 66, 69 (D. Mass. 2016); Svensson, 558 F. Supp. 2d at 140 (explaining that "the limitations period begins to run when the claimant learns of the adverse employment action, not when a plaintiff learns of the improper motives"). "The baseline rule is that time limitations are important in discrimination cases, and that federal courts therefore should employ equitable tolling sparingly." Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 278 (1st Cir. 1990). If notice of an adverse employment action is "equivocal," then "the clock may be tolled or simply never start to tick," Svensson, 558 F. Supp. 2d at 142, but "the plaintiff need not know all the facts that support his claim in order for countdown to commence." Morris, 27 F.3d at 750. Here, Awadh learned he would not be rehired in January 2010 in unequivocal terms. D. 1 ¶ 69. His later receipt of these documents in 2015 do not alter the alleged injury he was already well aware he had suffered and he already had asserted that such injury was the result of discrimination on Tourneau's part, namely in the MCAD charge he filed long before 2015.

Even upon the most liberal reading of Awadh's complaint suggests that his Section 1981 claim is predicated on conduct that occurred up to and including the time when his employment relationship ended. The statute of limitations thus began running on Awadh's claim no later than January 2010, upon Awadh's receipt of notice that his employment had been terminated. Awadh's Section 1981 claim is thus time-barred and dismissed.

   2.   *FMLA*

Awadh alleges that he was denied medical leave following his car accident in violation of the FMLA. D. 1 ¶¶ 3, 72-73. The FMLA guarantees "an eligible employee to 12 workweeks of leave during any 12-month period" for qualifying medical reasons. 29 U.S.C. § 2612(a)(1). Awadh's FMLA claim must be dismissed, however, for two reasons.

8

First, the claim is time-barred. The statute of limitations for a FMLA claim is two years "after the date of the last event constituting the alleged violation," unless there has been a willful violation of 29 U.S.C. § 2615, in which case the applicable limitations is three years from that date. 29 U.S.C. § 2617(c). Awadh's alleged medical leave occurred from late 2009 into early 2010, when he was not rehired at Tourneau. See D. 1 ¶¶ 59-69. Even if he could state a claim of willful violation, then, the underlying conduct giving rise to such a claim occurred well outside of the FMLA's statute of limitations.

Second, Awadh was not eligible for FMLA leave at the time of his injury. "The FMLA does not cover every employer and employee." Santana-Colon v. Houghton Mifflin Harcourt Publ'g Co., 81 F. Supp. 3d 129, 132 (D.P.R. 2014). To be an "eligible employee" under the FMLA, an employee must be employed for at least twelve months, working at least 1,250 hours during that twelve-month period, prior to taking FMLA leave. See 29 U.S.C. § 2611(2)(A); 29 C.F.R. 825.110(a). The complaint alleges that Awadh had worked for Tourneau for only eight months—from February to October 2009—when his car accident occurred. D. 1 ¶¶ 25, 59. In his opposition to the motion, Awadh argues he worked more than 1,250 hours at Tourneau prior to his termination, D. 50 at 50, but this alone is insufficient. The text of the statute also requires twelve months of work prior to FMLA eligibility and Awadh worked only eight months prior to taking leave. He was thus ineligible for FMLA leave at that time.

For both reasons, the Court dismisses Awadh's FMLA claim.

3. *Chapter 151B*

Under Massachusetts law, it is unlawful for an employer to discriminate against certain protected classes. Mass. Gen. L. c. 151B, §4. Awadh argues he was denied the vacant Assistant Manager position on January 16, 2009, "because of his race, color, national origin and sex," that his discharge following his automobile accident constitutes disability discrimination, and that

9

sexual comments and behavior during his tenure at Tourneau constituted sexual harassment in violation of the chapter. D. 50 at 42. Tourneau argues that Awadh's claims under Chapter 151B are time-barred. See D. 43 at 4.

A plaintiff must file a civil claim in either state or federal court alleging violations of Chapter 151B "not later than three years after the unlawful practice occurred." Mass. Gen. L. c. 151B, §9; see Everett v. 357 Corp., 453 Mass. 585, 594 (2009). As discussed above, even liberal reading of the complaint suggests Awadh's latest interactions with Tourneau within the employment relationship occurred on January 16, 2010, D. 1 ¶ 69, almost six years before Awadh filed his complaint here, D. 1.

Again, Awadh argues that the 2015 "discharge document" compels equitable tolling of the statutes of limitations in this case. D. 50 at 33-35. Massachusetts has its own "discovery rule," under which "the statute of limitations starts when the plaintiff discovers, or reasonably should have discovered, 'that [he] has been harmed or may have been harmed by the defendant's conduct.'" Koe v. Mercer, 450 Mass. 97, 101 (2007); Silvestris v. Tantasqua Reg'l Sch. Dist., 446 Mass. 756, 766 (2006) (applying discovery rule to a Chapter 151B claim). The Massachusetts "discovery rule" dictates that "the cause of action does not accrue until the plaintiff should reasonably have been aware that the adverse employment action was discriminatory." Poirier, 186 F. Supp. 3d at 69.

The Massachusetts discovery rule, however, does not aid Awadh here. As discussed above, even as relied upon by Awadh, the 2015 "discharge document" did not reveal discriminatory animus or activity such that a reasonable person would have then become aware of discriminatory activity. Indeed, Awadh's own activity suggests he was perfectly aware of his claim prior to 2015: he filed a complaint in August 2010 with the MCAD charging Tourneau with "unlawful

discriminatory employment practices because of disability, national origin, and race/color," D. 1 ¶ 8, and argues he "has been pursuing his rights diligently since" then, D. 50 at 35.

Accordingly, the Court dismisses Awadh's Chapter 151B claim.

### B. The Court Dismisses Awadh's Chapter 149 Claim

Awadh's complaint asserts that he was denied meal breaks in violation of Massachusetts law. D. 1 ¶¶ 74-76. The Massachusetts meal break statute, Mass. Gen. L. c. 149, § 100, however, "which requires that employers provide employees who work six hours or more with a thirty minute meal period, does not create a private right of action." Salvas v. Wal-Mart Stores, Inc., 452 Mass. 337, 372-73 (2008). Rather, enforcement of the statute lies exclusively with the Commonwealth's attorney general. Id. at 373. Awadh cannot, therefore, assert a claim against Tourneau under this statute.

The Court thus dismisses this claim.

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS Tourneau's motion to dismiss, D. 42, and Awadh's claims pursuant to Section 1981, the FMLA, Chapter 151B and Chapter 149. The Court notes that Awadh's Title VII, ADA and ADEA claims were not at issue in this motion and will thus go forward.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge